STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
AMI SHETH (Cal. Bar No. 268415)
Assistant United States Attorney
RIVERSIDE BRANCH OFFICE
     3403 10TH Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6228
     Facsimile: (951) 276-6237
     E-mail:   Ami.Sheth@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. ED CV 14-2292-VAP
                                   (No. ED CR 12-57-VAP)
          Plaintiff,
                                   GOVERNMENT'S OPPOSITION TO
               v.                  DEFENDANT'S MOTION FOR RELIEF
                                   PURSUANT TO 28 U.S.C. § 2255;
GARY ROGERS,                       EXHIBITS

          Defendant.


     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney AMI SHETH, hereby

files its opposition to defendant's motion for relief pursuant to 28

U.S.C. § 2255.

//

//

//

//

//

//

1    The government's opposition is based upon the attached

2 memorandum of points and authorities, the attached exhibits, the

3 files and records in this case, and such further evidence and

4 argument as the Court may permit.

5 Dated: December 3, 2014          Respectfully submitted,

6                                  STEPHANIE YONEKURA
                                   Acting United States Attorney
7
                                   ROBERT E. DUGDALE
8                                  Assistant United States Attorney
                                   Chief, Criminal Division
9

10                                      _____/s/_____

11                                 AMI SHETH
                                   Assistant United States Attorney
12
                                   Attorneys for Plaintiff
13                                 UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................1

      A.    Offense Conduct..........................................1

      B.    The Charges and Defendant's Guilty Plea..................4

      C.    Sentencing...............................................8

      D.    Direct Appeal and Defendant's Inmate Housing............10

      E.    Defendant's § 2255 Motion...............................11

III.  ARGUMENT.....................................................11

      A.    Defendant Has Procedurally Defaulted His Claims By
            Failing To Raise Them Before The District Court or The
            Court of Appeals on Direct Review.......................12

            1.    Defendant Established No Cause For Failing To
                  Raise His Claims Before The District Court Or On
                  Appeal............................................13

            2.    Defendant Demonstrated No Prejudice As To His
                  2255 Claims To Overcome Procedural Default.........18

      B.    Defendant's Claims Fail On The Merits...................18

      C.    This Court Should Deny Any Request for a Certificate
            of Appealability........................................20

IV.   CONCLUSION...................................................20

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                    PAGE(S)

**FEDERAL CASES**

Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003) ................14

Cockett v. Ray, 333 F.3d 938 (9th Cir. 2003).......................13

Lewis v. Casey, 518 U.S. 343, 351 (1996)..........................19

Murray v. Carrier,
       477 U.S. 478, 106 S. Ct. 2639, 91 L.Ed.2d 397 (1986).........13

Reed v. Ross,
       468 U.S. 1, 16, 104 S. Ct. 2901, 82 L.Ed.2d 1 (1984).........13

Schlup v. Delo, 513 U.S. 298 (1995)...............................12

Strickland v. Washington,
       466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)......13, 14

Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir.1988).............18

United States v. Barron, 172 F.3d 1153, 1157 (9th Cir.1999).......18

United States v. Benboe, 157 F.3d 1181 (9th Cir. 1998)...........12

United States v. Frady,
       456 U.S. 154, 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982).........12

United States v. Johnson, 988 F.2d 941 (9th Cir. 1993)...........12

United States v. Ratigan, 351 F.3d 957 (9th Cir. 2003)........12, 13

**FEDERAL STATUTES AND SENTENCING GUIDELINES**

18 U.S.C. § 1591(a)(1), (b)(1)....................................4, 5

18 U.S.C. § 1594(c)...............................................4, 5

18 U.S.C. § 3553(a)............................................5, 7, 10

28 U.S.C. §§ 2253(c)(2), (c)(3)...................................20

U.S.C. § 2255.................................................passim

USSG § 3A1.1(B)(1)............................................... 8

USSG § 5K2.13................................................... 8

ii

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      On November 6, 2014, defendant Gary Rogers ("defendant" or "G.

4 Rogers") filed a motion for relief from his sentence pursuant to 28

5 U.S.C. § 2255.[1]  CR 467, Defendant's Motion for Relief Pursuant to 28

6 U.S.C. § 2255 ("Defendant's 2255 Motion").  In his motion, defendant

7 raises the following three grounds for relief: (1) his attorney

8 failed to present evidence of defendant's mental disabilities to the

9 Court at sentencing; (2) defendant had no access to a law library

10 prior to signing his plea agreement; and (3) defendant's attorney

11 told defendant that he would not be held accountable for the actions

12 of other co-defendants and that he would not get a sentence of 204

13 months' imprisonment.  As described below, defendant's arguments lack

14 merit and this § 2255 motion should accordingly be denied.

15 **II.   STATEMENT OF FACTS**

16      **A.    Offense Conduct**

17      Beginning in approximately January 2011, the Inland Child

18 Exploitation/Prostitution Task Force began investigating a group of

19 individuals for the sex trafficking of minors.  Investigators

20 identified Rolling 60s Crips gang members and female associates who

21 recruited and employed minors for the purpose of child prostitution

22 and benefitted financially from the prostitution proceeds from

23 approximately January through August 2011.  CR 363, Presentence

24

25      [1] Pursuant to the Court's Order Requiring Return to Defendant's § 2255 Motion, the Respondent is to serve a copy of the Return upon the Petitioner prior to the filing of this Opposition.  The

26 government will ensure that a service copy is mailed to the Petitioner at his current Bureau of Prisons designation tomorrow,

27 December 4, 2014, and will thereafter file proof of such service. The government apologizes for the delay in sending the service copy

28 to the Petitioner.

Report ("PSR") ¶ 17.  Specifically, investigators identified four male pimps (Paul Bell, Samuel Rogers ("S. Rogers"), Gary Rogers, and Christopher Weldon) and three female associates (Javiya Brooks, Kimberly Alberti, and Kristy Harrell) who recruited and employed minors for the purpose of prostitution, and one female associate that helped manage the prostitution proceeds for one of the pimps (Su Yan).  Id., ¶¶ 18-20.  The female associate for a pimp was often called his "bottom" or "bottom bitch," meaning that pimp's most trusted prostitute who helped recruit and manage the pimp's other prostitutes.  In this case, Brooks' was Bell's bottom, Alberti was S. Rogers' bottom, and Harrell was G. Rogers' bottom.  Id., ¶ 19.

Investigators also identified at least seven victims in this case, referred to as Victim 1 - Victim 7.  Id., ¶ 21.  All of the victims except Victim 6 were under 18 when the conduct occurred.  Id. Victim 6 was an adult when the alleged crimes occurred but was used as a prostitute through force, threats of force, fraud, and coercion. Id.

Defendant Gary Rogers worked closely with Harrell as his bottom, and also with co-defendants Bell and S. Rogers.  While they had their own prostitutes who provided them with prostitution proceeds, the pimps often discussed recruiting or 'trading' females.  Id., ¶ 18. Or, when one or more of them was in custody, they managed the prostitutes for the other suspects.  Id.

G. Rogers, Bell, and S. Rogers often discussed recruiting and managing their prostitutes together.  Jails calls between G. Rogers, Bell, S. Rogers, and other co-defendants in March and April of 2011, demonstrate how the G. Rogers worked with his co-conspirator pimps to further their sex trafficking enterprise and to make money for the

purpose of bailing himself and S. Rogers out of jail.  CR 412, Exhibit B to Government's Sentencing Reply, Description of Selected Jail Calls on March 24, 28-30, 2011, and April 8, 10-12, 2011.  For example, during an April 11, 2011, jail call, co-defendants G. Rogers, Bell, and S. Rogers all discuss the prostitution business. CR 412, Exhibit C to Government's Sentencing Reply, Transcript for April 11, 2011, Jail Call.  During the call, G. Rogers states that "Shelly trying to work to get you out too," referring to a female Bell identifies as 15 years old who is working as a prostitute to earn enough money to bail S. Rogers out of jail.  Id., p. 4122. Later in the call, both Bell and G. Rogers ask each other why the other one "ain't selling your bitch," questioning why each other's prostitutes are not working.  Id., p. 4123.  Bell later tells G. Rogers to "bring the bitch to another blade.  Sit the bitch down out there," instructing G. Rogers to make his prostitutes work.  Id., p. 4124.  Later in the phone call, G. Rogers states that "Shelly want to get down too.  Man, I don't care how old she is, she can get down out there and then send the money," again talking about causing a 15-year old female to work as a prostitute.  Id., p. 4140.

In addition to, and as a part of, defendant's participation in the sex trafficking conspiracy, defendant G. Rogers used his "bottom," co-defendant Harrell as a prostitute and directed her to supervise Victim 6 as a prostitute.  CR 363, PSR ¶¶ 18, 19, 23, 24. Specifically, in February and March, 2011, Alberti befriended V6 (then 19) on Facebook and started recruiting her to work as a prostitute.  Id., ¶ 24.  On or about March 6, 2011, G. Rogers, along with co-defendants S. Rogers and Alberti, drove to Victim 6's home and picked her up.  Id., ¶¶ 24, 28.  The defendants brought Victim 6

3

1   back to a hotel in the Compton area.  Id.  Both G. Rogers and S.

2   Rogers engaged in sexual conduct with Victim 6.  Id.

3        G. Rogers persuaded Victim 6 to work for him as a prostitute.

4   Id.  He directed Victim 6 and co-defendant Harrell to go out on the

5   street to look for dates for prostitution and instructed Harrell to

6   teach Victim 6 what to do to get dates, how much to charge dates for

7   prostitution, and other rules Victim 6 had to follow.  Id.  G. Rogers

8   later physically abused Victim 6 for not making money for him from

9   prostitution, and for not following his rules.  Id.  G. Rogers also

10  directed Harrell to hit Victim 6, which she did.  Id.  Furthermore,

11  the investigation uncovered evidence that Victim 6 had the mental

12  capacity of a young child.  Specifically, Victim 6's grandmother

13  described Victim 6 as having the mental capacity of a 12-year-old,

14  and a law enforcement officer described Victim 6 as "child-like."

15  Id., p. 9, fn. 2.

16       **B.   The Charges and Defendant's Guilty Plea**

17       On August 1, 2012, a federal grand jury returned an eighteen-

18  count indictment against eight defendants, including G. Rogers,

19  charging them with various crimes related to sex trafficking of both

20  minors and using force, fraud, and coercion.  CR 1, Indictment.  G.

21  Rogers was later charged in a first superseding indictment in which

22  he faced two counts: one count of conspiracy to engage in sex

23  trafficking in violation of 18 U.S.C. § 1594(c), and one count of sex

24  trafficking by force, fraud, or coercion in violation of 18 U.S.C.

25  § 1591(a)(1), (b)(1).  CR 234, First Superseding Indictment.

26       On November 4, 2013, counsel for defendant G. Rogers filed a

27  request for a pre-plea report where defense counsel explained that

28  the parties were "in the process of negotiating a plea agreement,"

4

1   and that the pre-plea report would allow the defendant "to be fully

2   informed of the consequences of any potential plea."  CR 227, Ex

3   Parte Application for Pre-Plea Report.  The pre-plea report was

4   disclosed on November 19, 2013, and concluded that defendant would

5   like have a criminal history category of V[2], and that he would not

6   likely be deemed a career offender within the meaning of the

7   sentencing guidelines.  CR 232, Pre-Plea Report as to G. Rogers.

8        On December 4, 2013, defendant pleaded guilty to conspiracy to

9   commit sex trafficking in violation of 18 U.S.C. § 1594(c).  CR 248,

10  Plea Agreement; CR 339, Change of Plea; CR 363, PSR ¶¶ 1-3.

11  Defendant entered his guilty plea pursuant to a written plea

12  agreement with the government.  Id.

13       In the written plea agreement, defendant agreed to plead guilty

14  to count one of the superseding indictment (conspiracy to commit sex

15  trafficking in violation of 18 U.S.C. § 1594(c)) in exchange for,

16  among other things, the government's promise to dismiss the remaining

17  count in the superseding indictment (for a violation of 18 U.S.C.

18  § 1591(a)(1), (b)(1)), which would have carried a mandatory minimum

19  sentence of 15 years' imprisonment).  CR 248, Plea Agreement ¶ 3.

20  The parties also agreed to a factual basis, a base offense level of

21  34, a three-level reduction for acceptance of responsibility, and

22  sentencing recommendations of no less than 120 months' imprisonment

23  (for defendant) and no more than 210 months' imprisonment (for the

24  government) - the latter of which is six months more than defendant's

25

26        [2] Pursuant to the subsequent PSR, the USPO correctly excluded
    three points for defendant's state conviction related to the offenses
27  charged in the federal indictment, and therefore, defendant's
    criminal history category was determined to be IV, rather than V.  CR
28  363, PSR ¶¶ 53-66.

eventual sentence.  Id., ¶¶ 11, 13, 3(d), 2(e), and 2(h).  Defendant also agreed that he understood that:

> defendant cannot have any expectation of receiving a sentencing within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

Id., ¶ 12.  The plea agreement also explicitly provided that the statutory maximum sentence for defendant's conviction is life imprisonment.  Id., ¶ 5.

Defendant waived his right to appeal his conviction, id., ¶ 17, and, as provided as follows, specifically agreed to conditionally waive his right to appeal his sentence up to 240 months' imprisonment:

> Defendant agrees that, provided the Court imposes a total term of imprisonment . . . of no more than 240 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court . . .

Id., ¶ 18.

The plea agreement also explicitly states that defendant remains bound to the plea agreement if the Court does not follow the parties' recommendations at sentence, and that no one could promise or guarantee what sentence defendant would receive:

> Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

6

<u>Id.</u>, ¶ 26.  Finally, directly above his signature, defendant

declared:

> I have read this agreement in its entirety.  I have had
> enough time to review and consider this agreement, and I
> have carefully and thoroughly discussed every part of it
> with my attorney.  I understand the terms of this
> agreement, and I voluntarily agree to its terms.  I have
> discussed the evidence with my attorney, and my attorney
> has advised me of my rights, of possible pretrial motions
> that might be filed, of possible defenses that might be
> asserted either prior to or at trial, of the sentencing
> factors set forth in 18 U.S.C. § 3553(a), of relevant
> Sentencing Guideline provisions, and of the consequences of
> entering into this agreement.  No promises, inducements, or
> representations of any kind have been made to me other than
> those contained in this agreement.  No one has threatened
> or forced me in any way to enter into this agreement.  I am
> satisfied with the representation of my attorney in this
> matter, and I am pleading guilty because I am guilty of the
> charges and wish to take advantage of the promises set
> forth in this agreement, and not for any other reason.

<u>Id.</u>, p. 20.

At the change of plea, on December 4, 2013, the court questioned

the defendant pursuant to Rule 11, and found that the plea was

knowledgeable and voluntarily made.  CR 339.  Defendant affirmed that

he understood that there would be a maximum penalty of life

imprisonment, and that the Court had the discretion to sentence

defendant within the maximum sentence.  Defendant affirmed the

contents of the factual basis after it was read to him.  Defendant

also affirmed that he understood that he was waiving, to a large

extent, his right to appeal his conviction and sentence.  He also

affirmed that his plea was voluntary and that no one had threatened

him into pleading guilty.  The Court found, after observing his

manner, demeanor and attitude, that defendant entered his guilty plea

freely, knowingly, and voluntarily, and that there was a sufficient

7

1   factual basis to support his plea of guilty to count one of the first

2   superseding indictment.

3       **C.   Sentencing**

4       The PSR calculated a total offense level of 33 (after a three-

5   level reduction for acceptance of responsibility) and a criminal

6   history category of IV based on (1) a conviction for Carjacking (with

7   at least six probation revocations and violations) in 2006, (2) a

8   conviction for possession of a stolen vehicle and driving with a

9   suspended license in 2010, and (3) for being on probation in both of

10  the aforementioned cases while committing the instance offenses.  CR

11  363, PSR ¶¶ 36-47, 53-66.  The PSR calculated the Guidelines range as

12  188 to 235 months' imprisonment.  PSR, ¶ 114.  The United States

13  Probation Officer ("USPO") recommended a prison term of 219 months,

14  or 18 years and 3 months, based on a high-end recommendation of 235

15  months, reduced by 16 months to account for defendant's state

16  sentence for his conviction for Pay for Prostitution related to his

17  offense conduct in this case regarding Victim 6.  CR 362, USPO's

18  Recommendation.  One of the bases for a high-end recommendation was

19  defendant's use of force and the nature of his crime:

20          G. Rogers physically abused Victim 6, and directed Harrell
            to abuse Victim 6 as well.  This use of force served to
21          coerce Victim 6 into prostitution activities and presumably
            inspired fear of repercussions for leaving.  The fact that
22          physical violence and injury were involved in the offense
            is not captured by the guideline range, which would be the
23          same if the offense involved merely fraud or deceit rather
            than physical force.

24

25  Id., p. 7. In mitigation, the USPO also discussed defendant's

26  disadvantaged childhood, lack of support as a juvenile, and his

27  mental health, but determined that the latter was not sufficient to

28  warrant a departure pursuant to USSG § 5K2.13.  Id., p. 7-8.

1    In its sentencing brief, the government concurred with the
2 USPO's calculations but argued for an additional two-level increase
3 to defendant's offense level for vulnerable victim, pursuant to
4 United States Sentencing Guideline ("USSG") § 3A1.1(b)(1), as to
5 Victim 6.  CR 377, Government's Sentencing Position.  Based on an
6 offense level of 35, the government's calculated sentencing range was
7 235 to 293 months' imprisonment.  Id.  Consistent with the plea
8 agreement, the government then recommended 210 months' (or 17 years
9 and six months) in custody.  Id.

10    Defendant sought a sentence of 120 months, or 10 years
11 imprisonment.  CR 396, Defendant's Sentencing Position.  While
12 defense counsel concurred with the sentencing calculations in the
13 PSR, he raised several factual objections to the PSR, and also argued
14 that defendant, having only been in a conspiracy with Harrell, should
15 not be held accountable for actions related to a conspiracy involving
16 Bell and S. Rogers.  Id., p. 2.

17    Furthermore, in support of a 10-year sentencing recommendation,
18 among other arguments, defense counsel presented mitigating
19 information about the defendant, including his mental health:

20        Mr. Rogers' depression that resulted from losing his
       daughter, was so severe that his mother brought him to a
21       psychiatrist, who diagnosed Mr. Rogers as bipolar and
       schizophrenic.  Mr. Rogers took various psychiatric
22       medications for his conditions, and participated in
       counseling while incarcerated, but never on his own – and
23       eventually resorted to self-medicating through the use of
       marijuana and alcohol.
24

25 Id., p. 5.  Defense counsel argued that defendant's mental health
26 problems had a significant impact on Mr. Rogers, and that the Court
27 should consider this hardship in mitigation, as "Mr. Rogers'
28 psychiatric condition essentially going untreated and unmedicated for

9

several years, it's pretty clear that this had a profound effect on Mr. Rogers' behavior in the instant offense – as it clearly affected his views regarding his own self worth and the worth of others." Id., p. 6.  Defense counsel urged the Court to consider Mr. Rogers' mental health history using the § 3553(a) factors to "fashion an appropriate sentence."   Id.

In its reply, the government set forth its basis for arguing that defendant G. Rogers was involved in a conspiracy with Bell and S. Rogers, as well as with Harrell, and argued that G. Rogers' conduct went beyond his actions with Victim 6, but also extended to his participation in recruiting and using other prostitutes, both minors and adults, for financial gain.  CR 412, Government's Sentencing Reply p. 2-5.

On April 11, 2014, the Court, after having reviewed the PSR, the USPO's recommendation, and all of the parties' sentencing filings, determined the offense level to be 35, and with a criminal history category of IV, the sentencing range to be 235 to 293 months.  The Court then sentenced defendant to 204 months of imprisonment, or 17 years.  CR 423, Sentencing; CR 424, Judgment and Commitment Order.

**D.   Direct Appeal and Defendant's Inmate Housing**

Defendant did not file a direct appeal.  On April 30, 2014, the Court filed notice of improper communication to the Court and ordered that the document be rejected and not filed.  CR 432.  On July 7, 2014, the government filed a notice of lodging for documents sent to the government by defendant.  CR 445.  These documents included a handwritten letter from defendant to the prosecutor assigned to this matter and a type-written document in the form of a legal pleading, the caption for which is "NOTICE OF APPEAL."  Id.  Finally, on July

22, 2014, the Court filed a second notice of improper communication to the Court and ordered that the document be rejected and not filed. CR 462.

From approximately August 23, 2012, to December 31, 2013, defendant was housed at Central Detention Center ("CDC") in San Bernardino, California, a county facility that houses federal inmates pursuant to a contract with the Marshals.  <u>See</u> Exhibit A, Defendant's Custody Report.  After defendant's change of plea, on December 31, 2013, defendant was moved to Metropolitan Detention Center-Los Angeles ("MDC-LA").  <u>Id.</u>  Defendant was in MDC-LA from approximately December 31, 2013, to June 3, 2014.  <u>Id.</u>  While at MDC-LA, defendant had access to a law library.  <u>See</u> Exhibit B, Excerpt from the MDC-LA Admission & Orientation Handbook, p. 15 ("The electronic law library is available in housing units and in the education department.").

### E.    Defendant's § 2255 Motion

On November 6, 2014, defendant filed his 2255 Motion.  CR 467, Defendant's 2255 Motion.  In the motion, defendant asserts the following grounds for relief: (1) defendant's counsel failed to present his mental history report and therefore it was not considered at sentencing; (2) defendant had no access to a law library until after he signed his plea agreement; and (3) defendant signed the plea agreement in reliance of defendant's counsel's statements that defendant would not be held accountable for the other defendants in the case and that defendant would not get 204 months' imprisonment for his crimes.  <u>Id.</u>, p. 6, 9, and 13.

## III. ARGUMENT

Defendant's challenges to his conviction and sentence fail due to procedural default, as they were never raised before the district

1  court or court of appeals on direct review.  Furthermore, defendant

2  also failed to establish sufficient grounds for relief under § 2255

3  based on the merits of his claims.  Therefore, defendant's § 2255

4  motion should be denied in its entirety and the Court should decline

5  to issue a certificate of appealability.

6       **A.   Defendant Has Procedurally Defaulted His Claims By Failing**
        **To Raise Them Before The District Court or The Court of**
7       **Appeals on Direct Review**

8       Defendant has never raised any of his claims before this Court

9  or the Court of Appeals on direct review.  It is well settled, as a

10 matter of Supreme Court and Ninth Circuit law, that a defendant's

11 failure to raise an issue before the district court and the court of

12 appeals on direct review amounts to a procedural default of that

13 claim.  See, e.g., United States v. Frady, 456 U.S. 154, 162, 164,

14 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982); United States v. Johnson, 988

15 F.2d 941 (9th Cir. 1993).

16      Once a claim has been procedurally defaulted, a court may a

17 court may entertain that claim in a § 2255 proceeding only if

18 defendant establishes both cause for failing to raise the issue and

19 resulting prejudice.[3]  Frady, 456 U.S. at 162, 164; Benboe, 157 F.3d

20 at 1183; United States v. Ratigan, 351 F.3d 957, 964 (9th Cir. 2003).

21 Defendant has not, and cannot, meet any grounds for excusing his

22 procedural default.

23

24

25

_____

26      [3] A district court may also excuse a procedural default where
   the defendant makes a colorable showing of actual, factual innocence.
27 See United States v. Benboe, 157 F.3d 1181, 1183 (9th Cir. 1998);
   Schlup v. Delo, 513 U.S. 298, 327-28 (1995).  Defendant makes no such
28 claim in this case, so this exception is accordingly not applicable.

1         1.  <u>Defendant Established No Cause For Failing To Raise</u>

2            <u>His Claims Before The District Court Or On Appeal</u>

The elements constituting "cause" have been narrowly construed by the Supreme Court.  First, a defendant may demonstrate that the legal or factual argument was "so novel" that it was utterly unavailable previously.  <u>See Reed v. Ross</u>, 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L.Ed.2d 1 (1984).  Defendant makes no such claims in his § 2255 motion.

Second, a defendant may attempt to demonstrate that his counsel was constitutionally ineffective within the meaning of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).[4] "Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default."  <u>See Murray v. Carrier</u>, 477 U.S. 478, 492, 106 S. Ct. 2639, 91 L.Ed.2d 397 (1986).  Thus, to prevail in this type of showing of "cause," defendant must prove that (1) his counsel's performance was constitutionally deficient; and (2) he was prejudiced by that deficient performance.  <u>Strickland</u>, 466 U.S. at 684-87; <u>Ratigan</u>, 351 F.3d at 965.  In evaluating an ineffective assistance of counsel claim, the Court may consider the performance and prejudice components of the <u>Strickland</u> test in either order. <u>Strickland</u>, 466 U.S. at 697. Furthermore, the Court need not consider one component if there is an insufficient showing of the other.  <u>Id.</u>

As to counsel's performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  <u>Id.</u> at 690.

---

[4] In addition to these two grounds, a defendant may also contend that government actors actually prevented his from raising the claim on direct review.  Such a contention has not been made in this case.

1   Moreover, "the mere fact that counsel failed to recognize the factual

2   or legal basis for the claim, or failed to raise the claim despite

3   recognizing it, does not constitute cause for a procedural default."

4   Cockett v. Ray, 333 F.3d 938, 943 (9th Cir. 2003) (citation and

5   internal quotation omitted).

6       Even if a defendant overcomes this presumption of reasonable

7   performance by his counsel and demonstrates that his counsel's

8   performance was deficient, a defendant must still show that such

9   deficiency resulted in prejudice to him.  Strickland, 466 U.S. at

10  687.  To establish prejudice, a defendant "must show that there is a

11  reasonable probability that, but for counsel's unprofessional errors,

12  the result of the proceeding would have been different.  A reasonable

13  probability is a probability sufficient to undermine confidence in

14  the outcome."  Id. at 694.

15      For the reasons discussed herein, defendant can neither

16  establish that defense counsel's performance was constitutionally

17  defective, nor that he suffered any prejudice from it.  Accordingly,

18  the defendant's two claims related to ineffective assistance of

19  counsel should be denied.[5]

20  _____

21       [5] Defendant's ineffective assistance of counsel claims result in
    a waiver of the attorney-client privilege as to communications with
22  his former counsel relevant to the ineffective assistance claim.  In
    light of Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003), however,
23  the procedures required to define the contours of the appropriate
    waiver and implement it with the required limitations could
24  significantly delay proceedings in this case.  For the reasons set
    forth in this opposition, the government believes that defendant's
25  ineffective assistance of counsel claims can be resolved against
    defendant without disclosure of communications between defendant and
26  his former counsel, and so without the need for the parties and the
    Court to engage in the time-consuming procedures required to disclose
27  those communications.  If the Court disagrees, and believes that
    examination of the communications between defendant and his former
28  counsel are necessary to resolution of defendant's ineffective
                                    (footnote cont'd on next page)

                            14

1              *a.   Defense Counsel Did Not Fail To Present*
                     *Defendant's Mental Health History At Sentencing*
2                    *And Defendant Suffered No Prejudice*

3          Defendant complains that his lawyer failed to present

4    defendant's mental history report and defendant was sentenced without

5    it.  CR 467, Defendant's 2255 Motion p. 6.  Contrary to defendant's

6    argument, the record establishes that defendant's counsel was not

7    only effective, but extremely proactive in bringing to the Court's

8    attention mitigating evidence related to defendant's mental history.

9    In defendant's Sentencing Position, defense counsel, citing the PSR

10   where appropriate, set forth in detail defendant's mental history

11   beginning with the death of defendant's baby cousin when defendant

12   was only six years old and the toll such a traumatic event had on

13   defendant.  CR 396, Defendant's Sentencing Position p. 4-5.  Defense

14   counsel proceeded to describe G. Rogers' plight as a youth dealing

15   with the prevalence of violence, narcotics, crime, and utter lack of

16   positive role models.  Id., p. 5.  Defense counsel explained that as

17   a young adult, defendant's loss of custody of his daughter had a

18   negative effect on defendant's mental health, causing depression, as

19   well as diagnoses of bipolar disorder and schizophrenia.  Id.

20   Defense counsel also described how defendant's mental condition had a

21   profound effect on his behavior in the instant offense.  Id., p. 5-6.

22   Therefore, defense counsel's performance was not deficient, and in no

23   circumstance, constitutionally deficient as defense counsel

24

25   _____

26   assistance of counsel claims, the government requests that the Court
     find a limited waiver of the attorney-client privilege and permit the
27   government to submit a filing setting forth procedures for
     implementing the waiver and requesting a briefing schedule for
28   further addressing defendant's ineffective assistance claims.

1    affirmatively raised defendant's mental history for purposes of

2    sentencing.

3         Furthermore, assuming defense counsel's performance were

4    considered constitutionally deficient, defendant fails to offer any

5    explanation of how such a failure prejudiced defendant.

6              *b.*   *Defendant Was Appropriately Advised As To His*
                *Plea Agreement, Entered His Plea Voluntarily, and*
7              *Suffered No Prejudice.*

8         Defendant contends that he signed his plea agreement because his

9    attorney told him that he would not be accountable for the conduct of

10   his co-defendants and that he would not get 204 months for his

11   crimes.  CR 467, Defendant's 2255 Motion p. 13.  Contrary to

12   defendant's assertions, based on the signed plea agreement, and the

13   Court's change of plea hearing, defense counsel reviewed the plea

14   agreement with his client, defendant signed the plea agreement having

15   thoroughly reviewed it, and defendant's plea of guilty was determined

16   by the Court to be made knowingly and voluntarily.  CR 248, Plea

17   Agreement; CR 339, Change of Plea.

18        With respect to defendant's argument that defense counsel told

19   defendant he would not be held accountable for the conduct of his co-

20   defendants – defense counsel raised this argument in his sentencing

21   brief.  Specifically, defense counsel argued that information

22   regarding the other co-defendants was irrelevant to the PSR as

23   defendant was only involved in a conspiracy with Harrell.  CR 396,

24   Defendant's Sentencing Position p. 2.  The government, in its

25   Sentencing Reply, argued that defendant was involved in a sex

26   trafficking conspiracy, not only with Harrell, but also with Bell and

27   S. Rogers.  CR 412, Government's Sentencing Reply p. 2-5.  The

28   government also provided jail call transcripts and other evidence to

16

support its contention.  Id.  Therefore, while defense counsel argued to exclude defendant's involvement with his pimp co-defendants, the Court's decision to deny such an objection does not constitute a failure or deficiency as to the defense counsel's performance.

With respect to defendant's argument that defense counsel told him he would not get 204 months' imprisonment, such an argument is incredulous.  As an initial matter, in Defendant's 2255 Motion, he quotes his attorney as telling him "you won't get 204 months for this."  CR 467, Defendant's 2255 Motion p. 13.   While the Court did sentence defendant to 204 months, prior to sentencing, there was no significance to that exact length of a prison term anywhere in the record.  Rather, prior to sentencing, the relevant terms as to sentencing included 210 months (the government's recommendation, 219 months (the USPO's recommendation) and 120 months (defense counsel's recommendation).  Therefore, it is unlikely that defense counsel specifically stated that defendant would not get 204 months' imprisonment prior to sentencing.

Furthermore, even if defense counsel intimated that defendant would not get a sentence as high as 204 months, the record indicates that defendant pled guilty knowing the maximum possible sentence of life, the fact that the judge had the discretion to sentence defendant to anything up to life, and the fact that defendant's plea waiver barred him from appealing his sentence so long as it was at or below 240 months' imprisonment.  Defendant indicated on his plea agreement that he was voluntarily pleading guilty, knowing the possible consequences described therein.  CR 248, Plea Agreement.  In fact, defendant even acknowledged that in the plea agreement that "[n]o promises, inducements, or representations of any kind have been

made to me other than those contained in this agreement." <u>Id.</u>, p. 20.  At the change of plea, the Court only accepted the guilty plea after being satisfied by defendant's responses and the Court's own observation, that defendant was voluntarily pleading guilty.  Thus there is no evidence -- either offered by defendant or within the record -- that defendant was pleading guilty without knowing the possible consequences.

Furthermore, defendant has failed to demonstrate how defense counsel's alleged deficient performance prejudiced defendant.

Because defendant has not and cannot establish that his counsel was ineffective, he cannot show cause for failing to raise the issues in his 2255 motion before this Court or the Court of Appeals.

2.   <u>Defendant Demonstrated No Prejudice As To His 2255 Claims To Overcome Procedural Default</u>

Even if defendant had shown cause, excusing his failure to previously raise his claims (which he did not), defendant has made no effort to demonstrate prejudice.  Indeed, he cannot do so, as his claims, discussed in detail herein, are without merit.

**B.   Defendant's Claims Fail On The Merits**

Under 28 U.S.C. § 2255, the court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." <u>Tripati v. Henman</u>, 843 F.2d 1160, 1162 (9th Cir.1988).  If the court finds that relief is warranted under Section 2255, it must "vacate and set the judgment aside" and do one of four things: "discharge the prisoner or resentence him or

18

1  grant a new trial or correct the sentence as may appear appropriate."
2  28 U.S.C. § 2255(b); see also United States v. Barron, 172 F.3d 1153,
3  1157 (9th Cir.1999).

4      In this case, even if defendant's claims were not procedurally
5  defaulted, the claims do not present valid bases for relief under
6  § 2255.  As to defendant's claims related to ineffective assistance
7  of counsel, the same analysis as presented above applies.
8  Defendant's only remaining claim is that he lacked access to a law
9  library until after he signed a plea agreement.  CR 467, Defendant's
10  2255 Motion p. 9.  While prisoners have a right to reasonable access
11  to the courts, prisoners have no "abstract, freestanding right to a
12  law library or legal assistance . . ." Lewis v. Casey, 518 U.S. 343,
13  351 (1996).  In order to be deemed a constitutional violation, a
14  prisoner must demonstrate that "alleged shortcomings to a prison law
15  library or legal assistance program hindered his efforts to pursue a
16  legal claim." Id.

17      In this case, defendant has made no showing of how his lack of
18  access to a library hampered his ability to raise any specific claim.
19  Furthermore, during the relevant period of time, defendant was
20  represented by counsel and therefore did have access to legal
21  assistance.  Notably, from December 31, 2013, through June 3, 2014,
22  defendant was housed MDC-LA, where he did have access to a law
23  library.  While defendant had already signed a plea agreement at that
24  stage of the proceeding, defendant was not prevented from raising an
25  appeal as to any alleged claims.

26      This Court should deny defendant's request for relief under
27  § 2255, as each of defendant's claims have been procedurally
28  defaulted and also fail on the merits.

### C.   This Court Should Deny Any Request for a Certificate of Appealability

As discussed above, none of defendant's claims has merit.  Nor has defendant "made a substantial showing of the denied of a constitutional right" as to any of these issues, which is requirement if defendant is to obtain a certificate of appealability ("COA") in order to appeal this Court's ruling.  See 28 U.S.C. §§ 2253(c)(2), (c)(3).  The government therefore requests that this Court deny any request for a COA.

### IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court or deny defendant's § 2255 motion.